**MURRAY, STONE & WILSON, PLLC**
By:  Matthew T. Stone, Esquire
One Belmont Avenue, Suite 310
Bala Cynwyd, PA 19004
215-947-5300
Email:  mstone@mswlawgroup.com

THIS IS NOT AN ABRITRATION
CASE.  ASSESSMENT OF DAMAGES
IS REQUIRED; JURY TRIAL DEMANDED.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THERESA DANTE, individually and on
behalf of similarly situated individuals,

And

THEODORE HUSS, individually and on
behalf of similarly situated individuals,

And,

JULIET HINRICHS, individually and on
behalf of similarly situated individuals,

And

SAMANTHA OGGS, individually and on
behalf of similarly situated individuals,

And,

MARGARET GATES, individually and on
behalf of similarly situated individuals,

　　　　　Plaintiffs,

　　　　　-vs-

JOSEPH SCHWARTZ,

And

ROSIE SCHWARTZ,

And

SKYLINE HEALTH CARE, LLC,

And

SKYLINE MANAGEMENT GROUP, LLC,

Civil Action No.


**CLASS ACTION COMPLAINT**


**JURY TRIAL DEMANDED**

And

AMERICAN PLAN ADMINISTRATORS,

And

CORNERSTONE QUALITY CARE, LLC,

And

COTTONWOOD HEALTHCARE, LLC,

And

FIRST LANDING INFORMATION
SERVICES, LLC,

    Defendants.

Plaintiffs, Theresa Dante, Theodore Huss, Juliet Hinrichs, Samantha Oggs and Margaret Gates, on their behalf and on behalf of all other similarly situated individuals, by and through undersigned counsel, Murray, Stone & Wilson, PLLC, file the instant Class Action Complaint, and in support thereof aver the following:

## PRELIMINARY STATEMENT

1.   This lawsuit involves employees of dozens of nursing homes who had health, dental and Aflac supplemental insurance premiums deducted from their paychecks, only to have these premiums willfully pocketed by the Defendants without paying for the insurance. As a result, they have amassed significant liabilities after having undergone medical procedures with the belief that the same would be paid for with their employer-provided insurance. In short, this is a case about theft.

2.   This is just one instance in which Joseph Schwartz, sitting atop the Skyline Healthcare Empire, has engaged in nationwide fraud, theft, and other illicit conduct, along with the other named Defendants, to maximize the amount of money he could collect from the various facilities owned and operated by the Skyline Healthcare Empire.

3.       Since Mr. Schwartz rapidly acquired 100+ nursing homes in 2017, making him the owner of one of the largest nursing home chains in the country, the states of South Dakota, Nebraska, Arkansas, and Kansas, have had to dispossess Mr. Schwartz of these homes under involuntary receivership proceedings, for non-payment of bills and for jeopardizing the welfare of the residents and employees.

## JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 as well as the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), as minimal diversity exists and the amount in controversy exceeds $5,000,000.00.

5.       Venue is proper in this judicial district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391 because Defendants are subject to personal jurisdiction in this judicial district, all Defendants regularly conduct business in this district and the events giving rise to the allegations in this action occurred in this District.

## THE PARTIES

6.       Plaintiff/Class Representative THERESA DANTE is an individual and citizen of the state of Georgia, residing at 169 Old Holcomb Bridge Way, Roswell, GA 30076.  She was employed as a cook for the Redfield Nursing and Rehabilitation Center in South Dakota.

7.       Plaintiff/Class Representative THEODORE HUSS is an individual and citizen of the state of South Dakota residing in Ipswich, SD 57451.  He was employed as an Administrator for the Ipswich Nursing and Rehabilitation Center in South Dakota.

8.       Plaintiff/Class Representative JULIET HINRICHS is an individual and citizen of the state of Kansas residing at 1021 Congress Street, Emporian, KS 66801.  She was employed as a Registered Nurse for the Chase County Nursing and Rehabilitation Center in Kansas.

9.     Plaintiff/Class Representative MARGARET GATES is an individual and citizen of the state of Arkansas residing at 6 Lakeside Lane, Newport, AR 72112.  She was employed as an activities director at Lindley Healthcare and Rehab in Arkansas.

10.     Plaintiff/Class Representative SAMANTHA OGGS is an individual and citizen of the state of Nebraska residing at 2326 Central Avenue, Nebraska City, NE 68410.  She was employed as an LPN at Nebraska City Care and Rehab in Nebraska.

11.     Defendants JOSEPH SCHWARTZ and ROSIE SCHWARTZ (the "Schwartzes"), husband and wife, are the sole members and/or owners of SKYLINE HEALTH CARE, LLC SKYLINE MANAGEMENT GROUP, LLC, AMERICAN PLAN ADMINISTRATORS, CORNERSTONE QUALITY CARE, LLC, COTTONWOOD HEALTHCARE, LLC and FIRST LANDING INFORMATION SERVICES, LLC as well as dozens of nursing homes across the country. They reside and are domiciled in New York at 1859 54th Street, Brooklyn, NY 11204 and regularly conducted business in this District.

12.     Defendant, SKYLINE HEALTHCARE, LLC, is a limited liability corporation domiciled in New Jersey with a registered address of 505 Marlboro Road, Woodridge, NJ 07075, and an alternate address c/o Joseph Schwartz, 1859 54th Street, Brooklyn, NY 11204.  At all times material hereto, it was engaged in the business of owning, operating and/or managing nursing homes, including the Skyline Facilities as defined below, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public and regularly conducted business in this District.

13.     Defendant, SKYLINE MANAGEMENT GROUP, LLC is a limited liability corporation domiciled in New Jersey with a registered address of 505 Marlboro Road, Woodridge, NJ 07075, and an alternate address c/o Joseph Schwartz, 1859 54th Street, Brooklyn, NY 11204. At all times material hereto, it was engaged in the business of owning, operating and/or managing

nursing homes, including the Skyline Facilities as defined below, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public and regularly conducted business in this District.

14.    Defendant AMERICAN PLAN ADMINISTRATORS ("APA") is a company domiciled in New York with a principle place of business located at 18 Heyward St. Brooklyn, NY 11249.  At all relevant times, it was in the business of administrating health and dental insurance plans at the Skyline Facilities as defined below.  APA had a fiduciary duty to all Skyline employees enrolled in insurance plans for which it was the administrator, manager, or broker and regularly conducted business in this District.

15.    Defendant CORNERSTONE QUALITY CARE, LLC is a limited liability corporation domiciled in New Jersey with its principal place of business located at 40 Vreeland Avenue, Totowa, NJ 07512, and an alternate address c/o Joseph Schwartz, 1859 54th Street, Brooklyn, NY 11204.  At all times material hereto, it was in the business of owning, operating and/or managing nursing homes, including the Skyline Facilities as defined below, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care.  It held itself out as the employer of the employees at the Skyline Facilities, defined below and regularly conducted business in this District.

16.    Defendant FIRST LANDING INFORMATION SERVICES, LLC is a limited liability corporation domiciled in Virginia with its principal place of business located at 3388 Princess Anne Road, Ste 2000, Second Floor, Virginia Beach, VA 23456-000.  At all times material hereto, it was in the business of owning, operating and/or managing nursing homes, including the Skyline Facilities as defined below, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to individuals in the Skyline Facilities defined below and regularly conducted business in this District.

17.     Defendant COTTONWOOD HEALTHCARE, LLC is a limited liability corporation domiciled in New Jersey with a registered address of 505 Marlboro Road, Woodridge, NJ 07075, and an alternate address c/o Joseph Schwartz, 1859 54th Street, Brooklyn, NY 11204. At all times material hereto, it was engaged in the business of owning, operating and/or managing nursing homes, including the Skyline Facilities as defined below, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public and regularly conducted business in this District.

## FACTS COMMON TO CLASS CERTIFICATION AND ALL COUNTS

### The Skyline Enterprise

18.     The "Skyline Enterprise" is comprised of several corporations, partnerships and limited liability entities that Joseph and/or Rosie Schwartz own, manage and control.

19.     The Skyline Enterprise is not – and never was – a legitimate, functioning nursing home chain.

20.     The entities that comprise the Skyline Enterprise were created for the purposes of obfuscation, risk management and financial gain.

21.     Joseph and Rosie Schwartz intentionally divided the various components required to operate their nursing homes, including the facilities herein, amongst various entities that they own and control.

22.     Joseph and Rosie Schwartz could have organized the facilities to independently perform all of the services and tasks necessary for the operation of the Facility, but instead chose to structure those various services and tasks amongst multiple separate entities – the Skyline Enterprise – that they own and control.

23.     The Skyline Enterprise's structure was not employed for any legitimate purpose.

24.     Rather, the Skyline Enterprise was utilized by Joseph and Rosie Schwartz to obtain access to the cash generated by nursing home operations, such cash being paid by Medicare, state Medicaid programs, insurance companies, and nursing home residents and their families.

25.     Instead of using the cash generated by the Skyline Enterprise for the provision of care to nursing home residents, Joseph and Rosie Schwartz regularly withdrew the cash for their personal benefit, to the detriment of the Skyline Enterprise's solvency and to the detriment of residents at the nursing facilities.

26.     The cash generated by the Skyline Enterprise was likewise diverted by Joseph and Rosie Schwartz via inter-company transfers masquerading as fees for services.

27.     Joseph and Rosie Schwartz utilized each of the Skyline Enterprise entities in furtherance of their overriding mission: to generate large sums of cash that could be (and ultimately were) re-directed at the Schwartz's whim, regardless of the consequences to the nursing home residents in their care.

**The Schwartzes Lucrative Foray Into Nursing Care**

28.     In or around 2008, the Schwartzes created Skyline Healthcare, LLC to operate as a management company of several nursing homes owned by Mr. Schwartz in Pennsylvania and New Jersey.  Mr. and Mrs. Schwartz are the sole members of Skyline Healthcare, LLC.  In 2015, the Schwartzes, owned, operated, and/or managed approximately five skilled nursing facilities in New Jersey and Pennsylvania.

29.     Between 2015 and 2017, Joseph Schwartz and his wife Rosie Schwartz, acquired in excess of 100 nursing homes across the country.  Each one identified 505 Marlboro Road, Wood Ridge, NJ 07075-1235 as the address of its home office.[1]  Thus, in a span of 2 years, the Schwartzes

---

[1] A Google images photo of this office, conspicuously above a New Jersey pizza shop, is attached as **Exhibit "A."**

went from owning a handful of nursing facilities to running one of the largest nursing home chains in the country.

30.    In connection with the acquisition of these new homes, the Schwartzes created Skyline Management, LLC to act as the vehicle, along with Skyline Healthcare, LLC, to control the flow of money from the newly acquired nursing homes to the Skyline Enterprise's own bank accounts.

31.    In January of 2017, the Schwartzes acquired several homes in South Dakota Kansas, Arkansas and Nebraska including:

> Arlington Care and Rehabilitation Center
> Armour Care and Rehabilitation Center
> Clark Care and Rehabilitation Center
> Groton Care and Rehabilitation Center
> Ipswich Care and Rehabilitation Center
> Lake Nordon Care and Rehabilitation Center
> Madison Care and Rehabilitation Center
> Millbank Care and Rehabilitation Center
> Mobridge Care and Rehabilitation Center
> Pierre Care and Rehabilitation Center
> Prairie Hills Care and Rehabilitation Center
> Meadowbrook Care and Rehabilitation Center
> Bella Vista Care and Rehabilitation Center
> Black Hills Care and Rehabilitation Center
> Redfield Care and Rehabilitation Center
> Salem Care and Rehabilitation Center
> Watertown Care and Rehabilitation Center
> Covington Care and Rehabilitation Center (collectively the "South Dakota Facilities")
>
> And
>
> Chase County Care & Rehabilitation Center, LLC
> Downs Care & Rehabilitation Center, LLC
> Kaw River Care & Rehabilitation Center, LLC
> Parkway Care & Rehabilitation Center, LLC
> Edwardsville Care & Rehabilitation Center, LLC
> El Dorado Care & Rehabilitation Center, LLC
> Eskridge Care & Rehabilitation Center, LLC
> Lansing Care & Rehabilitation Center, LLC
> Neodesha Care & Rehabilitation Center, LLC
> Pittsburg Care & Rehabilitation Center, LLC

Spring Hill Care & Rehabilitation Center, LLC
Wakefield Care & Rehabilitation Center, LLC
Wellington Care & Rehabilitation Center, LLC
Wichita Care & Rehabilitation Center, LLC
Wilson Care & Rehabilitation Center, LLC (collectively the "Kansas Facilities")

And

Broken Bow Care and Rehabilitation Center, LLC
Clarkson Care and Rehabilitation Center, LLC
Columbus Care and Rehabilitation Center, LLC
Cozad Care and Rehabilitation Center, LLC
Franklin Care and Rehabilitation Center, LLC
Fullerton Care and Rehabilitation Center, LLC
Grand Island Park Care and Rehabilitation Center, LLC
Hartington Care and Rehabilitation Center, LLC
Nebraska City Care and Rehabilitation Center, LLC
Neligh Care and Rehabilitation Center, LLC
Oneill Care and Rehabilitation Center, LLC
Omaha Metro Care and Rehabilitation Center, LLC
Sorensen Care and Rehabilitation Center, LLC
Schuyler Care and Rehabilitation Center, LLC
Scottsbluff Care and Rehabilitation Center, LLC
Sidney Care and Rehabilitation Center, LLC
Tekamah Care and Rehabilitation Center, LLC
Valhaven Care and Rehabilitation Center, LLC
Wausa Care and Rehabilitation Center, LLC (collectively the "Nebraska Facilities")

And

Batesville Health and Rehab
Broadway Health and Rehab
Capital Health and Rehabilitation Center
Creekside Health and Rehab
Dierks Healthcare & Rehabilitation Center, LLC
Fort Smith Health and Rehabilitation Center
Heritage of Hot Springs Health and Rehab
Hillview Post-Acute and Rehabilitation Center
Homestead Health and Rehabilitation Center
Jonesboro Health and Rehab
Lindley Healthcare and Rehabilitation Center
Little Rock Post-Acute and Rehabilitation
Madison Healthcare and Rehabilitation Center
Magnolia Health and Rehab
Mine Creek Health and Rehab
Mountain View Health and Rehabilitation Center
North Little Rock Health and Rehabilitation Center

9

Ozark Terrace Health and Rehabilitation Center
Searcy Health and Rehab
Spring Place Healthcare & Rehabilitation Center, LLC
White Hall Health and Rehab (collectively the "Arkansas Facilities") (together with
the South Dakota, Kansas and Nebraska Facilities, the "Skyline Facilities").

32.     Immediately, the Schwartzes under-funded and over-leveraged every one of their

newly-acquired homes, including each of the Skyline Facilities.

33.     Capitalization became dangerously inadequate insofar as bills were no longer paid

to vendors providing services at the nursing homes and employee benefits were simply terminated.

34.     Mr. Schwartz forecast his propensity – and intent – to defraud third-party vendors

during a June 15, 2017 deposition in nursing home abuse and neglect case.  When asked about the

importance of paying bills, Mr. Schwartz responded: "...because a guy send a bill in doesn't mean

he needs to get paid."[2]  And later when asked whether he is in charge of deciding which bills to

pay at Skyline nursing homes, Mr. Schwartz responded: "Again, I've explained to you.  I'm

constantly telling you, if a bill is not paid, could be there's a disagreement.  Because you bill

doesn't mean that's the number you're entitled to."[3]

35.     In Pennsylvania, Nebraska, Kansas, South Dakota and other states, involuntary

state-receivership proceedings were commenced to divest the Schwartzes from operating these

facilities due to non-payment of vendors, and neglect of residents.  Among these facilities were

the Skyline Facilities.

36.     In South Dakota for example, the following was written about the state of affairs at

the South Dakota Facilities:

> According to court documents filed this week, Menzenberg emailed
> several people, including at the state health department, labeling the
> message "URGENT" and of "High" importance. "I again have not
> gotten any information from Skyline!!! I just had a call from Louis

---

[2] Dep. Tr. J. Schwartz, *Devine v. Willow Terrace*, No. 141203114 (C.P. Philadephia) at 90:1-3, the relevant portions
of which are attached as **Exhibit "B."**
[3] *Id.* At 104:18-23.

> Schwartz - he says STATE has to do something - there is no money - he told me to discharge residents????" "I need water paid at Bella Vista and Prairie Hills today or it will be SHUT OFF — Skyline is SILENT!!!!" "I need Electric paid at Prairie Hills or shut off — Skyline is SILENT!!! "Disconnect notice came today for Pierre May 8 electric. I NEED HELP!!!!"[4]

Menzenberg, refers to Debbie Menzenberg, a regional director of operations for Skyline Healthcare.

37.     Likewise in Pennsylvania, employees at Schwartz-run facilities made similar complaints: "Our paychecks, they are never accurate.  We can't see our vacation time.  There are deductions being taken out that we don't understand why they're being deducted."[5]

38.     To date, more than 50 of the recently acquired facilities have been placed into receivership by the respective state oversight agencies due to non-payment of bills.[6]

39.     However, despite the refusal to honor contracts at these facilities, and despite being divested of the operational control of many facilities for this reason, the Schwartzes continued to acquire new homes as recently as February, 2018.

40.     What is clear is that the Skyline Enterprise designed a scheme to acquire as many facilities as possible, pocket as much revenue as possible, as quickly as possible, and then wash their hands of the whole thing.  Indeed, a spokesman for Skyline Healthcare, LLC conceded that they are already transitioning out of the nursing home industry, a year after acquiring more than 100 nursing homes: "[A]s with any transition, there have been hurdles."[7]

---

[4] https://www.capjournal.com/news/with-patients-at-risk-sout-dakota-judge-orders-pieree-nursing/article_39b57e46-4e8c-11e8-bb86-0f93c37a5915.html
[5] http://www.philly.com/philly/business/questions-about-skyline-healthcare-after-nursing-home-collapse-in-nebraska-and-kansas-20180412.html?mobi=true
[6] The Skyline Enterprise was the subject of a segment on Nightly News with Lester Holt: https://www.nbcnews.com/health/aging/nursing-home-chain-grows-too-fast-collapses-elderly-disabled-residents-n1025381
[7] https://insurancenewsnet.com/oarticle/receivership-clearing-hurdles-nearly-two-months-later#.W1dFaeS0WM-

41.     Like virtually every for-profit nursing home, the Skyline Facilities all operated at a spreadsheet loss while paying the Skyline Defendants exorbitant "management fees."

## THE INSURANCE SCAM

42.     When Skyline acquired the South Dakota, Arkansas, Nebraska and Kansas Facilities, it informed the employees that they would be enrolled in health, dental and Aflac insurance plans and that premiums would be directly deducted from their paychecks.

43.     Shortly thereafter, representative "salesmen" would visit each facility to enroll each and every employee in the Skyline Enterprise's health and dental plans as well as Aflac supplemental insurance.

44.     Thereafter, class members had premiums deducted from the pay checks every month.  However, ***no insurance was ever procured***.

45.     Notwithstanding, in January of 2018, Chana Kadin of HUB International Insurance, also a victim of the Insurance Scam, sent an email to the administrator at the Redfield Facility, indicating "We are pleased to inform you that APA (American Plan Administrators) has loaded all employees effective 1/1/18."

46.     The third-party administrator, American Plan Administrators, intentionally withheld from the Class that their deducted insurance premiums were not being used to fund the respective insurance plans.

47.     In early 2018, American Plan Administrator/Black Hills Insurance ceased acting as the plan administrator and was replaced with Tall Tree Administrators.  Shortly thereafter, Tall Tree Administrators issued the following statement:

> The self-funded employer group, Skyline Healthcare, has failed to provide Tall Tree with any funding for their employee claims.  After multiple attempts, it appears that the funding for claims will not occur, and therefore Tall Tree has terminated our services on behalf of Skyline Healthcare.  Please understand that Tall Tree Administrators is a third-party administrator, responsible only for the review of

12

> medical claims and customer service calls. All funding for claims was
> the responsibility of Skyline Healthcare.   The enclosed EOB can
> provide information on how this claim was considered, but Tall Tree
> is not responsible for the funding of these claims, and we suggest you
> contact the employer group Skyline Healthcare.

48.     The Skyline Enterprise included a phony company, Cornerstone Quality Care,

LLC, operating out of Skyline's offices in Totowa, New Jersey, to first enroll employees of the

South Dakota and Pennsylvania Facilities in various forms of insurance, deduct premiums from

Class Members paychecks, and then pocket the proceeds without actually purchasing any of the

promised benefits.

49.     Under the mistaken belief that they had health and dental insurance, Class members

underwent medical and dental procedures, which would have otherwise been paid for with

insurance, only to be billed for the same after being advised that no insurance had in fact been

purchased.

## CLASS MEMBER ALLEGATIONS

50.     The Class Representatives' 1095 tax filings for 2017 identifies their employer as

Defendant Cornerstone Quality Care, LLC, a company that they have otherwise never heard of,

but which shares an address with Skyline Healthcare, LLC, 40 Vreeland Avenue, Totowa, NJ

07512.

51.     The Class Representatives' W-2s reflect insurance premiums being deducted from

their paychecks for health insurance, provided by Cigna, and dental insurance, to be provided by

Ameritas.  Neither health nor dental insurance was in fact purchased for the Class Representatives.

52.     Indeed, employees' 2017 and 2018 1095c forms, the tax form identifying whether

an employee has been offered insurance and whether they in fact were enrolled in a company plan,

indicates that they were was ***never enrolled in any plan***.

53.     On January 16, 2018, Ms. Dante received medical treatment which should have been covered by her insurance totaling $76.00.  On June 8, 2018, she received a letter from the Redfield Clinic indicating "your insurance company has rejected these claims.  Therefore, the claims have been put into self-pay and are your responsibility."

54.     On February 19, 2018, Ms. Dante underwent several dental procedures totaling $330.00.  While the Ameritas insurance company initially paid $210 toward this total, they demanded Dakota Dental refund this amount, having realized that while it appeared that Ms. Dante had insurance on paper, no premiums had actually been paid.

55.     Mr. Huss underwent a dental procedure covered by his insurance.  Having undergone the procedure, his dentist submitted the claim for reimbursement, only to be told that the claim would not be honored as the insurance premiums were never paid totaling $1,000.

56.     In February of 2018, Mr. Huss underwent a medical procedure and currently owes approximately $10,000 in medical bills that would otherwise be covered by his purported medical insurance.

57.     On September 13, 2017, Ms. Hinrichs underwent medical procedures which should have been covered under her health insurance plan totaling $500.00.  She was told thereafter she had no insurance and thus owes this amount.

58.     On November 30, 2017, Ms. Hinrichs underwent medical procedures which should have been covered under her health insurance plan totaling $1,125.00.  She was told thereafter she had no insurance and thus owes this amount.

59.     On January 29, 2018, Ms. Hinrichs underwent medical procedures which should have been covered under her health insurance plan totaling $69.00.  She was told thereafter she had no insurance and thus owes this amount.

60.     On April 27, 2018, Ms. Hinrichs underwent medical procedures which should have been covered under her health insurance plan totaling $189.00.  She was told thereafter she had no insurance and thus owes this amount.

61.     From February 8, 2018 through June 29, 2018, Ms. Hinrichs had several office visits with her physician, which should have been covered under her health insurance plan totaling $123.00.  She was told thereafter she had no insurance and thus owes this amount.

62.     Further, Ms. Hinrichs elected to have Aflac Short Term Disability and Colonial Life Insurance premiums taken out of her paycheck.  When she discovered that these premiums were not being paid to Aflac and Colonial, she notified Skyline that she no longer wanted these premiums deducted.  This request was ignored and the premiums continued to be deducted, and ultimately stolen.

63.     Ms. Oggs underwent a dental procedure on or around January 2018.  At the time of the procedure, Ms. Oggs' dentist confirmed with Ms. Oggs' supposed insurance provider, Ameritas, that Ms. Oggs had dental insurance.  It was not until after the procedure was performed that Ms. Oggs' dentist, and then Ms. Oggs, was informed by Ameritas that Ms. Oggs did not in fact have dental insurance.  Ms. Oggs currently owes thousands of dollars to her dentist.

64.     In January of 2018, Ms. Gates underwent a medical procedure which should have been covered by her plan of insurance.  Prior to the procedure, Ms. Gates was told that her insurance would cover the same. Thereafter, Ms. Gates was told that in reality, insurance was never purchased on her behalf and that she owes in excess of $50,000.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this action under and pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of themselves and others similarly situated, seeking relief as more fully set forth hereinafter, including, but not limited to, statutory and other fair and adequate damages for the

Class members, together with equitable relief and an award of counsel fees, for three Subclasses

to be defined as follows:

> All persons employed at the following skilled nursing
> facilities at any point from January 1, 2017 to May 1, 2018
> (the "Class Period"):
>
>> Arlington Care and Rehabilitation Center
>> Armour Care and Rehabilitation Center
>> Clark Care and Rehabilitation Center
>> Groton Care and Rehabilitation Center
>> Ipswich Care and Rehabilitation Center
>> Lake Nordon Care and Rehabilitation Center
>> Madison Care and Rehabilitation Center
>> Millbank Care and Rehabilitation Center
>> Mobridge Care and Rehabilitation Center
>> Pierre Care and Rehabilitation Center
>> Prairie Hills Care and Rehabilitation Center
>> Meadowbrook Care and Rehabilitation Center
>> Bella Vista Care and Rehabilitation Center
>> Black Hills Care and Rehabilitation Center
>> Redfield Care and Rehabilitation Center
>> Salem Care and Rehabilitation Center
>> Watertown Care and Rehabilitation Center
>> Covington Care and Rehabilitation Center") (the "South Dakota Subclass").
>
> And
>
> All persons employed at the following skilled
> nursing facilities at any point from January 1, 2017
> to May 1, 2018:
>
>> Chase County Care & Rehabilitation Center, LLC
>> Downs Care & Rehabilitation Center, LLC
>> Kaw River Care & Rehabilitation Center, LLC
>> Parkway Care & Rehabilitation Center, LLC
>> Edwardsville Care & Rehabilitation Center, LLC
>> El Dorado Care & Rehabilitation Center, LLC
>> Eskridge Care & Rehabilitation Center, LLC
>> Lansing Care & Rehabilitation Center, LLC
>> Neodesha Care & Rehabilitation Center, LLC
>> Pittsburg Care & Rehabilitation Center, LLC
>> Spring Hill Care & Rehabilitation Center, LLC
>> Wakefield Care & Rehabilitation Center, LLC
>> Wellington Care & Rehabilitation Center, LLC
>> Wichita Care & Rehabilitation Center, LLC
>> Wilson Care & Rehabilitation Center, LLC (the "Kansas Subclass")

And,

All persons employed at the following skilled
nursing facilities at any point from January 1, 2017
to May 1, 2018:

Broken Bow Care and Rehabilitation Center, LLC
Clarkson Care and Rehabilitation Center, LLC
Columbus Care and Rehabilitation Center, LLC
Cozad Care and Rehabilitation Center, LLC
Franklin Care and Rehabilitation Center, LLC
Fullerton Care and Rehabilitation Center, LLC
Grand Island Park Care and Rehabilitation Center, LLC
Hartington Care and Rehabilitation Center, LLC
Nebraska City Care and Rehabilitation Center, LLC
Neligh Care and Rehabilitation Center, LLC
Oneill Care and Rehabilitation Center, LLC
Omaha Metro Care and Rehabilitation Center, LLC
Sorensen Care and Rehabilitation Center, LLC
Schuyler Care and Rehabilitation Center, LLC
Scottsbluff Care and Rehabilitation Center, LLC
Sidney Care and Rehabilitation Center, LLC
Tekamah Care and Rehabilitation Center, LLC
Valhaven Care and Rehabilitation Center, LLC
Wausa Care and Rehabilitation Center, LLC (the "Nebraska Subclass")

And

All persons employed at the following skilled
nursing facilities at any point from January 1, 2017
to May 1, 2018:

Batesville Health and Rehab, LLC
Broadway Health and Rehab, LLC
Capital Health and Rehabilitation Center, LLC
Creekside Health and Rehab, LLC
Dierks Healthcare & Rehabilitation Center, LLC
Fort Smith Health and Rehabilitation Center, LLC
Heritage of Hot Springs Health and Rehab, LLC
Hillview Post-Acute and Rehabilitation Center, LLC
Homestead Health and Rehabilitation Center, LLC
Jonesboro Health and Rehab, LLC
Lindley Healthcare and Rehabilitation Center, LLC
Little Rock Post-Acute and Rehabilitation, LLC
Madison Healthcare and Rehabilitation Center, LLC
Magnolia Health and Rehab, LLC
Mine Creek Health and Rehab, LLC
Mountain View Health and Rehabilitation Center, LLC

17

North Little Rock Health and Rehabilitation Center, LLC
Ozark Terrace Health and Rehabilitation Center, LLC
Searcy Health and Rehab, LLC
Spring Place Healthcare & Rehabilitation Center, LLC
White Hall Health and Rehab (the "Arkansas Subclass") (collectively with the Kansas Subclass, Nebraska Subclass and South Dakota Subclass, the "Class")

66.   Upon information and belief, based upon the duration of the Class period and the number of nursing facilities operated by the Defendants, there are in excess of 1000 class members.

67.   The members of the Class are so numerous that joinder of all members is impracticable.

68.   There are numerous questions of law and of fact common to the members of the Class which questions relate to the existence of the acts of wrongdoing alleged herein, the liability of defendants, and the culpability of defendants.

69.   Questions of law and fact common to the Class include, but are not limited to:

   a.   Whether Defendants collected, through automatic payroll deductions, health and dental insurance premiums from every employee at the Skyline Facilities?

   b.   The disposition of the amount collected as insurance premiums?

   c.   The decision not to spend money collected for health and dental insurance;

   d.   Whether Defendants negligently, willfully, intentionally or recklessly failed to purchase insurance for their employees?

   e.   Whether the Defendants violated the South Dakota, Kansas, Arkansas and Nebraska Wage and Consumer Protection laws?

   f.   Whether the Defendants violated the South Dakota, Kansas Arkansas and Nebraska Consumer Protection Statutes?

   g.   Whether Defendants violated the Racketeer Influenced And Corrupt Organizations Act?

h.   Whether the Plaintiffs and the members of the Class are entitled to statutory, compensatory, punitive and/or exemplary damages, and, if so, the nature of such damages; and

70.     Plaintiffs' claims are typical of the claims of the class.  Plaintiffs and all members of the Class have sustained damages, and the financial losses of all class members were directly caused by the defendant's negligent, willful, reckless and/or intentional failure to procure health and dental insurance after having deducted and pocketed premiums for the same.

71.     Plaintiffs will fairly and adequately assert and protect the interests of the Class, have no conflict of interest with respect to any named or unnamed members of the class, and fully intend to prosecute this action.  Plaintiffs fully recognize their role in representing thousands of nursing home employees who have been subjected to Defendants' illicit conduct.

72.     Plaintiffs have retained competent counsel experienced in class actions and consumer fraud litigation.  Counsel will fairly and adequately protect the interest of the Class and Subclasses.

73.     Plaintiffs have adequate financial resources or has made ethical arrangements with counsel whereby the cost of the administration of this litigation will be fully undertaken and provided.

74.      The prosecution of separate actions by individual members of the Class and Subclasses would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

75.     Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including pleading and factual issues relating to liability and remedies.

76.     This Class Action is a fair and efficient method of adjudicating the controversy.

This is a consumer class action in which the individual damages are too small in amount to justify the prosecution of separate claims by individual Class members. The damages of the Class in the aggregate are large and justify the significant expenses for research, investigation, discovery, hiring of experts and trial preparation which would be required to prosecute claims on behalf of the Class.

77.     The action is manageable as a Class Action. Upon information and belief, the payroll records of the Skyline Facilities will enable the Plaintiffs to identify other members of the Class. The Class is predominantly comprised of employees of the Skyline Facilities.

## COUNT I
## VIOLATION OF THE RACKATEER INFLUENCED AND CORRUPT
## ORGANIZATIONS ACT ("RICO") 18 U.S.C. § 1962 BROUGHT BY THE CLASS

78.     Plaintiffs incorporate by reference all of the preceding allegations as if fully set forth herein.

79.     The Skyline Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961.

80.     Each member of the Skyline Enterprise is a culpable person which knowingly and willfully participated in a pattern of unlawful racketeering activity for the purpose of intentionally defrauding Plaintiffs and other class members.

81.     The Skyline Enterprise engaged in a scheme to steal insurance premiums from its employees.  In total, the amount of premiums stolen is in excess of $2,000,000.

82.     The Skyline Enterprise engaged in this scheme through a pattern of acts and activities that are indictable under 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), both of which are unlawful acts, activities or conduct under the RICO statute (the "Predicate Acts").

83.     The Skyline Enterprise's use of mails, wires, and/or private or commercial

interstate carriers to perpetrate the Insurance Scam involved hundreds, if not thousands, of mail, wire or private or commercial interstate carrier communications, including those set forth above, which constitute predicate acts and unlawful activities under the RICO statute, including but not limited to, interstate carrier mailings and wire communications which directly or indirectly:

    a.   Made or transmitted fraudulent and material misstatements to the Skyline Facilities' employees concerning the procurement of health and dental insurance between January 1, 2017 and May 1, 2018;

    b.   Submitted false tax forms to the Internal Revenue Service indicating that the Skyline Enterprise was in compliance with the Affordable Care Act from January 1, 2017 and May 1, 2018;

    c.   Fraudulently transmitted funds from the paychecks of the class members' paychecks to Defendants' own coffers from January 1, 2017 and May 1, 2018.

84.    Each instance of mail or wire fraud constituted a pattern of deception and theft designed to perpetrate and/or conceal the Insurance Scam.

85.    Defendants' Predicate Acts in furtherance of the Insurance Scam constitutes a pattern of unlawful conduct over the course of approximately 17 months.

86.    As a direct and proximate result of Insurance Scam perpetrated by the Skyline Enterprise, Plaintiffs and all Class Members were injured in two ways: 1) their insurance premiums deducted from their pay checks were in reality stolen by the Skyline Enterprise; and, 2) they detrimentally relied upon the Skyline Enterprise's statements that they did in fact have health, dental or other insurance.  As a result of this reasonable reliance, Class Members have large medical bills.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants as follows:

1. That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b) (2) and/or (3), and that Plaintiffs be designated as Class representatives for the Subclasses;

2. An award of compensatory damages and treble damages;

3. An award of reasonable attorneys' fees, costs, pre and post judgment interest, expert witness fees and expenses;

4. Any and all such other relief as the Court may deem just and proper.

**COUNT II**
**CONSPIRACY TO VIOLATE THE RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C. § 1962 BROUGHT BY THE CLASS**

87.     Plaintiffs incorporate by reference all of the preceding allegations as if fully set forth herein.

88.     All Defendants conspired to, and did in fact, engage in the Insurance Scam.

89.     All Defendants agreed to conduct tens of thousands of violations of both 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) in furtherance of the Insurance Scam.

90.     The object of the conspiracy was to conduct or participate in the Insurance Scam through a pattern of unlawful activity as described above and to take measures to conceal the same.

91.     Defendants have engaged in, or have aided and abetted the commission of, numerous overt and fraudulent predicate acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiffs and Class Members of their insurance premiums as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants as follows:

1. That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b) (2) and/or (3), and that Plaintiffs be designated as Class representatives for the Class;

2. An award of compensatory damages and treble damages;

3. An award of reasonable attorneys' fees, costs, pre and post judgment interest, expert witness fees and expenses;

4. Any and all such other relief as the Court may deem just and proper.

**COUNT III**
**VIOLATION OF THE SOUTH DAKOTA CONSUMER PROTECTION LAW**
**BROUGHT BY THE SOUTH DAKOTA SUBCLASS**

92.     Plaintiffs incorporate by reference all of the preceding allegations as if fully set forth herein.

93.     Defendants' above described conduct, misrepresentations and omissions as well as Plaintiffs' and the South Dakota Subclass members' deception and/or injury occurred in great material part within the State of South Dakota.

94.     Defendants' conduct constitutes a violation of the South Dakota Consumer Protection Law ("SDCPL"), SDCL 37-24-1 *et seq*.

95.     Specifically, but without limitation, the conduct and omissions described above violate sections SDCL 37-24-6(1).

96.     Plaintiffs and others similarly situated were deceived by Defendants' deceptive pocketing of their insurance premiums.

97.     Plaintiffs and others similarly situated reasonably relied to their detriment upon defendants' deceptive statement that they were procuring insurance for the South Dakota Subclass.

98.     Plaintiffs and others similarly situated have been damaged and harmed and have sustained ascertainable losses as a result of Defendants' theft of insurance premiums.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants as follows:

5. That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (3), and that Plaintiffs be designated as Class representatives for the Class;

6. An award of compensatory damages;

7. An award of reasonable attorneys' fees, costs, pre and post judgment interest, expert witness fees and expenses;

8. Any and all such other relief as the Court may deem just and proper.

**COUNT IV**
**VIOLATION OF THE KANSAS CONSUMER PROTECTION LAW BROUGHT BY**
**THE KANSAS SUBCLASS**

99. Plaintiffs incorporate by reference all of the preceding allegations as if fully set forth herein.

100. Defendants' above described conduct, misrepresentations and omissions as well as Plaintiffs' and the Kansas Subclass members' deception and/or injury occurred in great material part within the State of Kansas.

101. Defendants' conduct constitutes a violation of the Kansas Consumer Protection Law ("KCPL"), K.S.A 50-623 *et seq*.

102. Specifically, but without limitation, the conduct and omissions described above violate sections K.S.A. 50-626(b)(2), (b)(3), (b)(4) and 627(b)(3), (b)(5), (b)(6).

103. Plaintiffs and others similarly situated were deceived by Defendants' deceptive pocketing of their insurance premiums.

104. Plaintiffs and others similarly situated reasonably relied to their detriment upon defendants' deceptive statement that they were procuring insurance for the Kansas Subclass.

105.     Plaintiffs and others similarly situated have been damaged and harmed and have sustained ascertainable losses as a result of Defendants' theft of insurance premiums.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants as follows:

9.   That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b) (2) and/or (3), and that Plaintiffs be designated as Class representatives for the Class;

10. An award of compensatory damages;

11. An award of reasonable attorneys' fees, costs, pre and post judgment interest, expert witness fees and expenses;

12. Any and all such other relief as the Court may deem just and proper.

## COUNT V
## VIOLATION OF THE NEBRASKA CONSUMER PROTECTION LAW BROUGHT BY THE NEBRASKA SUBCLASS

106.     Plaintiffs incorporate by reference all of the preceding allegations as if fully set forth herein.

107.     Defendants' above described conduct, misrepresentations and omissions as well as Plaintiffs' and the Nebraska Subclass members' deception and/or injury occurred in great material part within the State of Nebraska.

108.     Defendants' conduct constitutes a violation of the Nebraska Consumer Protection Law ("NCPL"), Neb.Rev.St. § 59-1061 *et seq.*

109.     Specifically, but without limitation, the conduct and omissions described above violate sections Neb.Rev.St. 59-1602 and 59-1609.

110.     Plaintiffs and others similarly situated were deceived by Defendants' deceptive pocketing of their insurance premiums.

111.    Plaintiffs and others similarly situated reasonably relied to their detriment upon defendants' deceptive statement that they were procuring insurance for the Nebraska Subclass.

112.    Plaintiffs and others similarly situated have been damaged and harmed and have sustained ascertainable losses as a result of Defendants' theft of insurance premiums.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants as follows:

1.  That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b) (2) and/or (3), and that Plaintiffs be designated as Class representatives for the Class;

2.  An award of compensatory damages;

3.  An award of reasonable attorneys' fees, costs, pre and post judgment interest, expert witness fees and expenses;

4.  Any and all such other relief as the Court may deem just and proper.

## COUNT VI
## VIOLATION OF THE SOUTH DAKOTA FRAUDULENT CONCEALMENT LAW
## BROUGHT BY THE SOUTH DAKOTA SUBCLASS

113.    Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

114.    By falsely promising to procure health and dental insurance for Plaintiffs and the members of the South Dakota Subclass, Defendants intentionally deceived Plaintiffs and the South Dakota Subclass members with the intent to steal their insurance premiums.

115.    But for the promise to procure insurance, Plaintiffs and the South Dakota Subclass members would not have acquiesced to having premiums be deducted from their paychecks.

116.    Plaintiffs and others similarly situated have been damaged and have sustained ascertainable losses as a result of Defendants' deceptive conduct.

WHEREFORE, Plaintiffs, for themselves and others similarly situated, respectfully request the following relief:

1. That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (3) , and that Plaintiffs be designated as Class representatives for the Class;

2. Judgment in favor of Plaintiffs and the South Dakota Subclass, and against Defendants, jointly and severally, with an award of compensatory damages;

3. Judgment in favor of Plaintiffs and the South Dakota Subclass, and against Defendants, jointly and severally, with an award of punitive damages;

4. Such additional and further relief as this Court may deem just and appropriate.

**COUNT VII**
**VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**BROUGHT BY THE ARKANSAS SUBCLASS**

117. Plaintiffs incorporate by reference all of the preceding allegations as if fully set forth herein.

118. Defendants' above described conduct, misrepresentations and omissions as well as Plaintiffs' and the Arkansas Subclass members' deception and/or injury occurred in great material part within the State of Arkansas.

119. Defendants' conduct constitutes a violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), 4 A.R. St. Subt. Ch. 88 *et seq*.

120. Specifically, but without limitation, the conduct and omissions described above violate sections A.C.A §§ 4-88-107 and 4-88-108.

27

121.   Plaintiffs and others similarly situated were deceived by Defendants' deceptive pocketing of their insurance premiums.

122.   Plaintiffs and others similarly situated reasonably relied to their detriment upon defendants' deceptive statement that they were procuring insurance for the Arkansas Subclass.

123.   Plaintiffs and others similarly situated have been damaged and harmed and have sustained ascertainable losses as a result of Defendants' theft of insurance premiums.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants as follows:

13. That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b) (2) and/or (3), and that Plaintiffs be designated as Class representatives for the Class;

14. An award of compensatory damages;

15. An award of reasonable attorneys' fees, costs, pre and post judgment interest, expert witness fees and expenses;

16. Any and all such other relief as the Court may deem just and proper.

**COUNT VIII**
**BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS**

124.   Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

125.   At all times material hereto, all Defendants, individually, collectively, voluntarily and in exchange for payment, fostered and forged a relationship of special confidence with the Plaintiffs and other Class Members.

126.   This special relationship was developed by virtue of the nature of the supposedly superior knowledge, skill and abilities, and the enormous disparity of power and unequal

bargaining position that the Defendants had over their employees.

127.    Defendants accepted this special confidence and trust placed in them by misrepresenting that they would procure dental and health insurance coverage for Plaintiffs and the Class.

128.    This special relationship enabled Defendants to occupy a position of confidence toward Plaintiffs and the Class, which required fidelity, loyalty, good faith, and fair dealing on the part of the Defendants.

129.    By falsely promising to procure health and dental insurance for Plaintiffs and the members of the Class, Defendants intentionally deceived Plaintiffs and the Class Members with the intent to steal their insurance premiums.

130.    But for the promise to procure insurance, Plaintiffs and the Class Members would not have acquiesced to having premiums be deducted from their paychecks.

131.    Plaintiffs and others similarly situated have been damaged and have sustained ascertainable losses as a result of Defendants' deceptive conduct.

WHEREFORE, Plaintiffs, for themselves and others similarly situated, respectfully request the following relief:

1.    That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (3) , and that Plaintiffs be designated as Class representatives for the Class;

2.    Judgment in favor of Plaintiffs and the Class, and against Defendants, jointly and severally, with an award of compensatory damages;

3.    Judgment in favor of Plaintiffs and the Class, and against Defendants, jointly and severally, with an award of punitive damages;

4.    Such additional and further relief as this Court may deem just and

appropriate.

## COUNT IX
## NEGLIGENCE

132.    Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

133.    The Defendants knew or should have known despite the Plaintiffs and Class Members paying for dental and health insurance coverage, no such coverage was being purchased on their behalf.

134.    Defendants exercised complete control over the deductions from Plaintiffs and Class Members' paychecks, the destination of those sums, and the ultimate failure to utilize those sums as warranted.

135.    The Defendants' negligence as set forth above directly and proximately caused harm to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs, for themselves and others similarly situated, respectfully request the following relief:

1.    That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (3) , and that Plaintiffs be designated as representatives for the Class;

2.    Judgment in favor of Plaintiffs and the Class, and against Defendants, jointly and severally, with an award of compensatory damages;

3.    Judgment in favor of Plaintiffs and the Class, and against Defendants, jointly and severally, with an award of punitive damages;

4.      Such additional and further relief as this Court may deem just and appropriate.

## COUNT X
## CONVERSION

136.    Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

137.    The Defendants unlawfully absconded with insurance premiums paid by the Class Members.

138.    Defendants exercised complete control over the deductions from Plaintiffs and Class Members' paychecks, the destination of those sums, and the ultimate failure to utilize those sums as warranted.

139.    The Defendants' willful conversion as set forth above directly and proximately caused harm to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs, for themselves and others similarly situated, respectfully request the following relief:

1.      That this action be certified as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (3) , and that Plaintiffs be designated as representatives for the Class;

2.      Judgment in favor of Plaintiffs and the Class, and against Defendants, jointly and severally, with an award of compensatory damages;

3.      Judgment in favor of Plaintiffs and the Class, and against Defendants, jointly and severally, with an award of punitive damages;

4.      Such additional and further relief as this Court may deem just and

appropriate.


Date:  January 30, 2020                              /s/ *Matthew T. Stone*
                                                    Matthew T. Stone, Esquire
                                                    **MURRAY, STONE & WILSON, PLLC**
                                                    One Belmont Avenue, Suite 310
                                                    Bala Cynwyd, PA  19004
                                                    Phone:  215-947-5300
                                                    Facsimile:  813-251-2209
                                                    Email:  mstone@mswlawgroup.com
                                                    *Attorneys for Plaintiffs*