# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA DANTE; TED HUSS; JULIET HINRICHS; SAMANTHA OGGS; MARGARET GATES,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH SCHWARTZ; ROSIE SCHWARTZ; SKYLINE HEALTH CARE, LLC; SKYLINE MANAGEMENT GROUP, LLC; CORNERSTONE QUALITY CARE, LLC; COTTONWOOD HEALTHCARE, LLC; FIRST LANDING INFORMATION SERVICES, LLC; and JACK JAFFA a/k/a CHAVA JAFFA,<br><br>Defendants. | Civ. Act. No.: 20-cv-01047 (JMV)(JBC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

WASSERMAN LEGAL LLC

1200 Route 22 East, Suite 2000, #2238
Bridgewater, New Jersey 08807
(973) 486-4801

*Attorneys for Defendant Jack Jaffa*

# Table of Contents

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    POINT I

    THE SECOND AMENDED COMPLAINT
    DOES NOT CONTAIN ANY FACTUAL ALLEGATIONS THAT
    PLAUSIBLY COULD STATE A CLAIM FOR RELIEF AGAINST
    DEFENDANT JACK JAFFA .................................................................................... 2

    POINT II

    AS AGAINST JAFFA, THE SECOND AMENDED COMPLAINT
    DOES NOT ALLEGE ANY OF THE ELEMENTS
    OF ANY OF THE CLAIMS ........................................................................................ 4

        A.    The SAC Fails To Allege The Necessary Elements
               Of The RICO Claims (Counts I and II) ........................................................ 5

        B.    The SAC Fails To Allege The Necessary Elements
               Of The State Law Fraud Claims (Counts III - VII) ..................................... 7

            1.    The SAC Fails To State Fraud-Based Claims
                   Against Jaffa Under South Dakota Law (Counts III and VI) ..... 8

            2.    The SAC Fails To Allege The Necessary Elements
                   Of The Kansas Consumer Protection Act Claim (Count IV) ..... 9

            3.    The SAC Fails To Allege The Necessary Elements
                   Of The Nebraska Consumer Protection Act Claim
                   (Count V) .................................................................................... 10

            4.    The SAC Fails To Allege The Necessary Elements
                   Of Arkansas' Deceptive Trade Practices Act Claim
                   (Count VII) ................................................................................ 11

        C.    The SAC Fails To Allege The Necessary Elements
               Of The Breach Of Fiduciary Duty Claim (Count VIII) ............................. 12

**Table of Contents**
**(continued)**

**Page**

D. The SAC Fails To Allege The Necessary Elements Of The Negligence Claim (Count IX) ................................................. 13

E. The SAC Fails To Allege The Necessary Elements Of The Conversion Claim (Count IX) ................................................. 13

CONCLUSION ................................................................................................. 15

## Table of Authorities

                                                             **Page(s)**

**Cases**

*Arthur v. Microsoft Corp.*,
   267 Neb. 586, 676 N.W.2d 29 (Neb. 2004) ..................................................10

*Glenfed Fin. Corp. v. Penick Corp.*,
   647 A.2d 852 (N.J. 1994) ...............................................................................14

*Grant v. Turner*,
   505 Fed. Appx. 107 (3d Cir. Nov. 27, 2012)................................................5, 6

*Kenney v. M2 Worldwide, LLC*,
   Civ. Action No. 12-1059 (SRC),
   2013 WL 3508564 (D.N.J. July 11, 2013) ......................................................3

*Louisburg Bldg. & Dev. Co. v. Albright*,
   45 Kan. App. 2d 618 (Kan. 2012) .................................................................10

*Moss v. Guttormson*,
   551 N.W.2d 14 (S.D. 1996)........................................................................8, 9

*Nelson v. Lusterstone Surfacing Co.*,
   258 Neb. 678, 605 N.W.2d 136 (Neb. 2000) ........................................... 10-11

*Ordosgiotti v. Werner Enterprises, Inc.*,
   8:20-CV-421, 2021 WL 826504 (D. Neb. March 4, 2021)...........................11

*Poling v. K. Hovnanian Enterprises*,
   99 F. Supp. 2d 502 (D.N.J. 2000)....................................................................5

*Sheeran v. Blyth Shipholding S.A.*,
   Civil No. 14-5482 (JBS/AMD),
   2015 WL 9048979 (D.N.J. Dec. 16, 2015) .....................................................6

*United Capital Funding Group, LLC v. Brick City Brewing, LLC*,
   Civ. Action No. 21-3314,
   2021 WL 5150197 (D.N.J. Nov. 4, 2021)............................................. 2, 3, 4

Defendant Jack Jaffa respectfully submits this reply memorandum of law in further support of his motion to dismiss the Second Amended Complaint ("SAC").

## PRELIMINARY STATEMENT

In his opening papers, Jaffa demonstrated that the SAC should be dismissed for failure to state a claim for relief against him because the SAC does not contain sufficient factual allegations of conduct by Jaffa. Indeed, at most, the SAC contains three (3) innocuous factual allegations concerning Jaffa.

In response, Plaintiffs submit a fictional, but highly salacious, story of fraud and conspiracy that cannot be reasonably inferred from the three factual allegations regarding Jaffa in the SAC. Rather, Plaintiffs' opposition brief merely confirms that Plaintiffs are seeking to find Jaffa liable based on the alleged conduct of Defendant Cornerstone Quality Care, LLC ("Cornerstone") despite the absence of any allegation that Jaffa participated in Cornerstone's supposed misconduct. Ultimately, despite Plaintiffs' improper attempts to exaggerate the minimal allegations against Jaffa, and to blend them with the alleged conduct of the grouped-together defendants, it is beyond reasonable dispute that the SAC falls far short of meeting the required pleading standards.

## ARGUMENT

### POINT I

### THE SECOND AMENDED COMPLAINT DOES NOT CONTAIN ANY FACTUAL ALLEGATIONS THAT PLAUSIBLY COULD STATE A CLAIM FOR RELIEF AGAINST DEFENDANT JACK JAFFA

As demonstrated in Point I of Jaffa's opening brief, the SAC does not contain sufficient factual allegations about Jaffa to meet the threshold required by *Iqbal/Twombly* to plead the elements of the claims for relief asserted in the SAC. As further demonstrated in Point I.A of Jaffa's opening brief, Plaintiffs' "group" pleading against "Defendants" does not suffice to allege claims against Jaffa specifically. Likewise, as demonstrated in Point II.B of Jaffa's opening brief, the SAC does not contain sufficient factual allegations -- *i.e.*, the who, what, where, when, why and how -- necessary to allege the fraud-based claims, as required by Rule 9(b). Indeed, the SAC does not allege even one statement by Jaffa.

Plaintiffs cite to this Court's recent decision in *United Capital Funding Group, LLC v. Brick City Brewing, LLC*, Civ. Action No. 21-3314, 2021 WL 5150197 (D.N.J. Nov. 4, 2021) (Vazquez, J.), but that decision supports Jaffa's argument, not Plaintiffs'. The Court in *Brick City* recognized that a member of an LLC is not subject to personal liability unless it is appropriate to (i) pierce the corporate veil, which is only available in extraordinary circumstances; or (ii) apply the "participation theory" of tort liability. Plaintiffs argue, however, that they are

2

"not seeking to hold Mr. Jaffa liable for the torts of Cornerstone" (Opp. at 3), thus making the veil-piercing analysis irrelevant.

Rather, it appears that Plaintiffs are trying to allege liability against Jaffa based on the "participation theory" of tort liability -- that is, "an LLC member can be held personally liable for a tort committed by the LLC when he or she is sufficiently involved in the commission of the tort." *Brick City,* 2021 WL 5150197 at *3. Of course, where, as here, the Plaintiffs allege fraud-based claims, this Court stressed that the fraud allegations must be pled with particularity under Rule 9(b), which the plaintiff in *Brick City*, like Plaintiffs here, failed to do. *Id.* at *3-5; *see also Kenney v. M2 Worldwide, LLC*, Civ. Action No. 12-1059 (SRC), 2013 WL 3508564 (D.N.J. July 11, 2013) (dismissing fraud claims against LLC member for failure to meet the particularity requirements of Rule 9(b)).

In *Brick City*, this Court found that plaintiff's "threadbare recitals of the elements of a cause of action for fraud are insufficient to satisfy the pleading requirements of Rule 12(b)(6), much less Rule 9(b)." *Id.* As this Court explained, the allegation that the LLC knowingly made misrepresentations to the plaintiff with the intent that the plaintiff would rely on those misrepresentations, were not sufficient to plead a cause of action for fraud against the member ***personally***. *Id.*

More specifically, the Court found that the *Brick City* plaintiff failed to plead that the member personally engaged in any fraudulent conduct, much like Plaintiffs

3

here have not pled that Jaffa *personally* engaged in *any* fraudulent conduct. Indeed, being a member of an LLC, supposedly sending individuals to enroll in insurance plans and receiving a letter (SAC, ¶¶ 15, 48 and 51) -- the only factual allegations against Jaffa -- do not amount to tortious conduct of any nature whatsoever. Likewise, the allegation that Plaintiffs' paystubs listed Cornerstone as the employer, and indicated deductions for insurance premiums, does not allege conduct by Jaffa. Thus, much like how the allegations in *Brick City* -- *i.e.*, that the LLC's invoices contained misrepresentations -- were not sufficient to allege claims against the LLC member, here too Plaintiffs' reference to Cornerstone's paystubs are insufficient to allege claims against Jaffa.

On its face, therefore, the SAC patently fails to contain sufficient factual allegations to find Jaffa personally liable under any of its claims for relief, whether viewed under Rule 12(b)(6) or the heightened pleading standard of Rule 9(b).

## POINT II

### AS AGAINST JAFFA, THE SECOND AMENDED COMPLAINT DOES NOT ALLEGE ANY OF THE ELEMENTS OF ANY OF THE CLAIMS

As demonstrated in Point I of Jaffa's opening brief, and Point I, *supra*, the insufficient factual allegations in the SAC do not possibly support the claims asserted against Jaffa. This conclusion is made more obvious by reviewing the elements of the specific claims.

4

### A. The SAC Fails To Allege The Necessary Elements Of The RICO Claims (Counts I and II)

As demonstrated in Point II.A of Jaffa's opening brief, the SAC fails to state a claim for relief under the RICO statutes. RICO claims are subject to the heightened pleading standard of Rule 9(b), and the SAC contains virtually no factual allegations regarding Jaffa whatsoever. The pleading in the instant action thus "represents precisely what the heightened pleading requirement is meant to protect against -- 'spurious charges of immoral and fraudulent behavior.'" *Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 507-509 (D.N.J. 2000) (citation omitted).

The sparse factual allegations in the SAC -- namely, that a third party addressed a letter to Jaffa; that he allegedly sent representatives to enroll employees in insurance plans; and that he allegedly owned one of the defendant companies -- simply do not include any misconduct **by Jaffa**, much less the details of any alleged misconduct, nor any supposed reliance by Plaintiffs on any such misrepresentations. In sum, the SAC simply does not identify the **who, what, where, when, and how** necessary to allege a RICO claim or any fraud-based claim for relief against Jaffa.

In their Opposition, Plaintiffs essentially admit their pleading does not include the necessary "date, place or time" detail required to plead a valid RICO claim. Opp. Br. at 5-7. Rather, citing *Grant v. Turner*, 505 Fed. Appx. 107 (3d Cir. Nov. 27, 2012) (*see* Opp. Br. at 7), they suggest that an alternate approach would be sufficient

by "injecting precision and some measure of substantiation" to the fraud allegations. *Id*. But Plaintiffs fail to do even that.

The plain deficiency of the allegations in the SAC results in Plaintiffs' overreliance on the allegation that Jaffa was an ***addressee*** on a letter from American Plan Administrators in 2018. *See* Opp. at 5, 6, 7, 14. But Jaffa's alleged receipt of a letter cannot provide the basis for a RICO claim. Putting the letter aside, Plaintiffs are left only with unspecific allegations referencing "Defendants" generally. And, to be clear, in the absence of more specific allegations with respect to certain defendants, *Turner* affirmed the district court's conclusion that "by lumping all [Defendants] together and naming them as a group, each defendant has not been properly or sufficiently placed on notice of the exact nature of the claims asserted, as these claims apply to each defendant." *Turner*, 505 Fed. Appx. at 112.[1]

---

[1] On pages 5-6 of the Opposition, Plaintiffs rely on allegations in paragraph 87 of the SAC, but do not mention that those allegations are not directed to Jaffa. Rather, those allegations are a classic example of "group" pleading. There are no allegations in paragraph 87 of the SAC regarding Jaffa or his conduct specifically, and there are no allegations in paragraph 87, or anywhere in the SAC, that ***Jaffa*** "[m]ade or transmitted fraudulent and material misstatements to Skyline Facilities' staff members" or "[s]ubmitted false tax forms to the Internal Revenue Service" or "[d]ocumented and submitted false payroll information to staff members" or "transmitted funds from the paychecks of the class members' paychecks to Defendants' own coffers." Plaintiffs' heavy reliance on "group" pleading does not suffice. *See* Moving Br. at 6-8; *Sheeran v. Blyth Shipholding S.A.*, Civil No. 14-5482 (JBS/AMD), 2015 WL 9048979 (D.N.J. Dec. 16, 2015).

6

In sum, the allegations that Jaffa received a letter, and that Jaffa allegedly sent representatives to enroll staff in insurance plans, do not constitute RICO-type allegations of, or participation in, (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Plaintiffs' statement on page 5 of the Opposition that Jaffa "conspired with Mr. Schwartz to steal insurance premiums by creating a dummy company to pose as Plaintiffs' employer and then pocket the collected premiums" is speculation untethered from any allegations in the SAC, as demonstrated by Plaintiffs' failure to cite to any paragraph of the SAC for support. Elsewhere, Plaintiffs attempt to rely on paragraphs 4 and 51 of the SAC for their dubious proposition, but, again, those paragraphs do not contain factual allegations to support their salacious argument.

For all of the foregoing reasons, the RICO claims should be dismissed as woefully deficient.

**B.  The SAC Fails To Allege The Necessary Elements Of The State Law Fraud Claims (Counts III - VII)**

Plaintiffs' reliance on state consumer fraud laws is specious. The consumer fraud statutes look to assist consumers seeking relief as victims of deceptive trade practices in commercial transactions -- not to protect employees from employers (or members of such employers) who allegedly failed to procure healthcare coverage. For the reasons demonstrated in Jaffa's opening brief, at Point I.B, the consumer fraud claims (Counts III-VII) should be dismissed.

### 1. The SAC Fails To State Fraud-Based Claims Against Jaffa Under South Dakota Law (Counts III and VI)

Once again, Plaintiffs' own legal citation is self-defeating. To the extent that *Moss v. Guttormson*, 551 N.W.2d 14 (S.D. 1996) -- the only case they cite to support their argument that the South Dakota Deceptive Trade Practices and Consumer Protection law could apply to employees -- is even relevant, it undermines Plaintiffs', and proves Jaffa's, argument.

There, the employer-distributor, without telling its sales personnel or consumers, substituted a cheaper grade of fish and mislabeled the weight of its lobster products, among other deceitful conduct in labeling. This conduct led to criminal charges and a plea agreement by such employer-distributor. The salesperson brought suit against his employer based on the fact that he was not told of this scheme to defraud customers, and that defendants were untruthful to him in answering his questions about their products. The plaintiff in *Moss* claimed that the dishonest practices marred his reputation and sought compensation for lost income, among other damages. Thus, as Plaintiffs necessarily recognize, the *Moss* case -- unlike the instant case -- concerned misrepresentations to customers "in connection with the sale or advertisement of any merchandise." Opp. Br. at 8.

Here, Plaintiffs do not allege (i) that Jaffa obtained any insurance premiums from Plaintiffs; (ii) that Jaffa made a single deceptive statement relating to insurance or otherwise, much less that he knowingly made any such deceptive statement, or

8

did so with the intent to deceive; (iii) that they relied on any statements by Jaffa; (iv) that they were induced to act by any statements by Jaffa; or (v) that their supposed damages arise "in connection with the sale or advertisement of any merchandise" as required by the DTPCP. Once again, Plaintiffs' sweeping conclusory accusations against "Defendants" do not provide particular information as to statements, courses of conduct or persons involved and, as such, are legally deficient to support their purported fraud-based claims under South Dakota law. Thus, even if the *Moss* case stretched the consumer fraud statute as far as they contend, which it does not, they still have not alleged a claim against Jaffa under South Dakota's consumer law.

Plaintiffs' fraudulent concealment claim under South Dakota law fails for the same reasons. Further, the SAC does not allege any factual basis for finding that Jaffa owed any duty to disclose to Plaintiffs, or that Jaffa made factual assertions to Plaintiffs while suppressing factual information that would make the statements misleading. *See* Opp. Br. at 9 (citing elements of a fraudulent concealment claim). Indeed, the SAC does not allege that Jaffa made a single statement to Plaintiffs.

### 2. The SAC Fails To Allege The Necessary Elements Of The Kansas Consumer Protection Act Claim (Count IV)

As they tried with South Dakota law, Plaintiffs wish to expand Kansas's consumer protection statute -- which applies to consumers and suppliers -- to a case involving an employer and employees. Plaintiffs, however, do not cite a single case applying the KCPA to an employer/employee relationship.

9

Further, Jaffa was not Plaintiffs' employer, so their argument fails in any event. And, beyond failing to adequately allege that Jaffa was a "supplier" under the KCPA, the SAC does not allege any facts from which it can be inferred that Jaffa committed an "unconscionable act or practice" or willfully failed to state a material fact. *See* K.S.A. 50-626; 50-627. *See also Louisburg Bldg. & Dev. Co. v. Albright*, 45 Kan. App. 2d 618, 649 (Kan. 2012) (there must be some evidence of both deceptive behavior and unequal power between the parties to prove a violation of the KCPA's prohibition on unconscionable conduct). To the contrary, Plaintiffs have pleaded only sweeping generalizations without any factual predicate that could constitute prohibited conduct by Jaffa under the KCPA.

### 3. The SAC Fails To Allege The Necessary Elements Of The Nebraska Consumer Protection Act Claim (Count V)

In his opening brief, Jaffa demonstrated that, on its face, Nebraska's consumer protection Act does not apply to the factual scenario here. Indeed, "[t]he purpose of the Act is to provide consumers with protection against unlawful practices in the conduct of any trade or commerce which directly or indirectly affects the people of Nebraska" and "was intended to be an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies." *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29, 37 (Neb. 2004). Jaffa also demonstrated that "the unfair or deceptive act or practice must have an impact upon the public interest." *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136, 142 (Neb.

2000). The Nebraska Supreme Court acknowledged that the CPA is not meant to apply to private contracts or "unfair or deceptive act[s] or practice[s] that affect[ ] only [the] parties to [a] transaction." *Nelson*, 258 Neb. at 683, 605 N.W.2d at 141 (citation omitted).

Here, however, Plaintiffs' claims concern only "the parties to a transaction," specifically, Cornerstone's employees, whether that is one Nebraskan employee or "thousands of Nebraskans." Opp Br. at 13. Said employees, as opposed to Nebraska's consumers at large, were parties to private contracts. *See also Ordosgiotti v. Werner Enterprises, Inc.*, 8:20-CV-421, 2021 WL 826504 (D. Neb. March 4, 2021) (dismissing CPA claim on motion to dismiss and finding that complaint did not adequately allege a direct or indirect effect on the general public for purposes of the Act but, rather, was targeted at a certain group, *i.e.,* long-haul truck drivers who contracted with a trucking company). And, again, the employees were alleged to be Cornerstone's employees, not Jaffa's, so Plaintiffs' analysis fails in any event.

### 4. The SAC Fails To Allege The Necessary Elements Of Arkansas' Deceptive Trade Practices Act Claim (Count VII)

Jaffa demonstrated in Point II.B.4 of his opening papers why Plaintiffs failed to state a claim against him under the ADTPA. In response, Plaintiffs once again stretch the allegations in their pleading beyond their breaking point to try to meet the standard required to proceed with this claim. Plaintiffs' have failed.

Plaintiffs state that they have "alleged that Mr. Jaffa conspired to withhold staff members insurance premiums for his personal gain, while misrepresenting to said staff members that such premiums were being paid by deceptively and falsely indicating as much on their paystubs." Opp. Br. at 14 (citing SAC ¶ 52). But that allegation is wholly conclusory and based on no factual allegations whatsoever. Indeed, it is yet another attempt to blend and combine Cornerstone and Jaffa into one, misattributing supposed "misrepresentations" to Jaffa when the SAC only references paystubs issued by Cornerstone. Cornerstone, not Jaffa, is Plaintiffs' alleged employer, and Cornerstone, not Jaffa, made any alleged representations to Plaintiffs. Further, there are no allegations in the SAC that Jaffa had any involvement whatsoever in the issuance of paystubs.[2]

**C.     The SAC Fails To Allege The Necessary Elements
         Of The Breach Of Fiduciary Duty Claim (Count VIII)**

Jaffa demonstrated in Point II.C of his opening brief that Plaintiffs have not alleged -- and cannot allege -- a breach of fiduciary duty claim against him because "[t]he SAC wholly fails to contain factual allegations supporting the existence of any type of fiduciary relationship of trust and special confidence between Jaffa,

---

[2] Plaintiffs' argument that Jaffa may have had "actual knowledge and purposely concealed the alleged scheme as evidenced by the March 29, 2018 termination letter from the plan administrator" (Opp. Br. at 14) is irrelevant because alleged "knowledge" is not an element of the claim, and because, even with such supposed knowledge, the SAC does not allege any basis to conclude that Jaffa owed a duty to disclose to Plaintiffs.

12

personally, and Plaintiffs." Moving Br. at 26. Quite simply, the SAC does not contain any allegations regarding any relationship between Plaintiffs and Jaffa, much less a "special relationship" of trust between them. Indeed, the SAC does not allege one single communication between Plaintiffs and Jaffa. And, again, Plaintiffs' allegation that they had relationship with Cornerstone, does not somehow create a fiduciary relationship between them and Jaffa.

### D. The SAC Fails To Allege The Necessary Elements Of The Negligence Claim (Count IX)

In Point II.D of his opening brief, Jaffa demonstrated that the SAC fails to allege a negligence claim because "the SAC does not contain any factual allegations showing that Jaffa owed Plaintiffs a legal duty, that Jaffa breached such a duty, or that any supposed breach of any supposed duty caused Plaintiffs any damages." Moving Br. at 27. Plaintiffs only response is to point to their impermissible, conclusory "group" allegations in paragraphs 136-138 of the SAC, which do not in any event show how Jaffa owed them any duty sounding in negligence nor how Jaffa supposedly breached it. Otherwise, Plaintiffs make arguments that stretch the allegations of the SAC beyond reasonable recognition.

### E. The SAC Fails To Allege The Necessary Elements Of The Conversion Claim (Count IX)

In Point I.E of his opening brief, Jaffa demonstrated that the conversion claim fails because "the SAC does not contain any factual allegations that Jaffa exercised

13

any control or dominion over Plaintiffs' property, much less that Jaffa acted in a way that would exclude the Plaintiffs' rights to that property."

Plaintiffs' reliance on *Glenfed Fin. Corp. v. Penick Corp.*, 647 A.2d 852 (N.J. 1994) is misplaced. There, the court found that the President and COO of the entity "expressly authorized the diversion" of those payments, thereby making him personally liable. Here, however, the SAC does not contain any factual allegations that Jaffa was even involved in the business affairs of Cornerstone, much less that he specifically authorized the alleged diversion or taking Plaintiffs' monies.

## CONCLUSION

For all of the foregoing reasons, and those set forth in the Moving Brief, Jaffa respectfully requests that his motion to dismiss the SAC be granted, as against him, and that the Court order such other and further relief as it deems appropriate.

Dated: Bridgewater, New Jersey
December 17, 2021

> Respectfully submitted,
>
> WASSERMAN LEGAL LLC
>
> By: _____
> Jeffrey I. Wasserman
> 1200 Route 22 East
> Suite 2000, # 2238
> Bridgewater, New Jersey  08807
> (973) 486-4801
> jwasserman@wasslegal.com

15