UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA DANTE, et al., *individually and on behalf of others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH SCHWARTZ, et al., <br><br> Defendants. | Civil Action No. 20-1047 (ES) <br><br> REPORT AND RECOMMENDATION |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiffs Theresa Dante, Theodore Huss, Juliet Hinrichs, Samantha Oggs and Margaret Gates (collectively "Plaintiffs") seeking the entry of a default judgment against Defendants Joseph Schwartz, Rosie Schwartz, Skyline Health Care, LLC, Skyline Management Group, LLC, Cornerstone Quality Care, LLC and Cottonwood Healthcare, LLC (collectively "Defendants"). *See* Dkt. No. 80. Plaintiffs' motion is unopposed. For the reasons set forth below, it is respectfully recommended that Plaintiffs' motion for default judgment [Dkt. No. 80] be **DENIED with prejudice**.

**I.   BACKGROUND**

Plaintiffs in this putative class action worked at nursing homes in Georgia, South Dakota, Arkansas and Nebraska. *See* Dkt. No. 33, Second Amended Complaint ("SAC") at ¶ 7-11. The nursing homes were owned by Defendant Skyline Healthcare, LLC ("Skyline"), whose sole members were Defendant Joseph Schwartz and his wife, Defendant Rosie Schwartz (collectively the "Individual Defendants"). *Id.* at ¶ 30-31. Skyline was founded in 2008 to manage nursing homes in New Jersey and Pennsylvania. *Id.* As of 2017, Skyline owned over 100 nursing homes

1

in several states. *Id.* at ¶ 31. To facilitate this growth, the Individual Defendants formed several LLCs, including Skyline Management Group, Cottonwood Healthcare, and First Landing Information Services, LLC. *Id.* at ¶¶ 16, 17, 32. Plaintiffs allege that the Individual Defendants grew their holdings quickly, siphoned off the revenue, and then divested themselves of the facilities. *Id.* at ¶ 43.

On December 13, 2016, Jack Jaffa formed Cornerstone Quality Care, LLC ("Cornerstone"), as its sole member. *Id.* at ¶¶ 15, 18, 33, 45. Cornerstone was the employer of record for Skyline's staff members, including Plaintiffs, and is listed on Plaintiffs' W2 and 1095 tax forms as their employer. *Id.* at ¶¶ 7-11, 33, 46, 55.

Defendants offered Plaintiffs and other employees health, dental, and supplemental insurance. *Id.* at ¶¶ 44, 48. Jaffa sent unnamed salespersons to Skyline's facilities, and the salespersons represented to the employees that they could participate in an insurance plan, with Defendants taking the premium payments directly from the employees' paychecks. *Id.* at ¶¶ 44, 48-49. Employees signed up to participate in the insurance plan and the premium amounts were withheld from their paychecks. *Id.* at ¶¶ 48-49.

Defendants retained American Plan Administrators as a third-party administrator. *Id.* at ¶ 51. However, Defendants did not fund the insurance plan and insurance was never provided to the employees. *Id.* at ¶¶ 49, 51. On March 29, 2018, American Plan Administrators sent a termination letter to Joseph Schwartz and Jaffa stating that they had continuously failed to pay their claims and had "substantial outstanding balances." *Id.* at ¶ 51.

Thereafter, Defendants retained Tall Tree Administrators as a third-party administrator. *Id.* at ¶ 53. Tall Tree Administrators subsequently terminated their services based upon Defendants' failure to provide any funding for their employees' claims. *Id.* Plaintiffs were unaware that the

insurance plans had not been funded and received medical and dental care for which they were unknowingly responsible. *Id.* at ¶¶ 54-68.

By 2018 or 2019, Skyline began to divest itself of recently acquired nursing homes, and by 2022, over fifty of Skyline's facilities had gone into state-run receiverships because of non-payment of bills. *Id.* at ¶¶ 38, 41, 43. Plaintiffs allege that the formation of Cornerstone and the nonpayment of insurance costs were part of a larger conspiracy between Joseph Schwartz and Jaffa to pocket those sums and run the facilities solely for their benefit. *Id.* at ¶¶ 4, 52.

Plaintiffs filed their initial Class Action Complaint in this matter on January 30, 2020. *See* Dkt. No. 1. Plaintiffs filed an Amended Complaint on October 21, 2020, adding Jaffa as a Defendant. *See* Dkt. No. 21. Plaintiffs' Second Amended Complaint, which is their operative pleading in this matter, was filed on August 17, 2021. *See* SAC. Plaintiffs' Second Amended Complaint asserts a single overarching class and several subclasses based on the state in which Plaintiffs were employed. The overarching class brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, in addition to claims for breach of fiduciary duty, negligence and conversion. *See* SAC. The subclasses assert various claims under the applicable state law. *See id.*

Jaffa, the only Defendant who has appeared in this action, filed a motion to dismiss the Second Amended Complaint on October 12, 2021. *See* Dkt. No. 38. The Court granted Jaffa's motion to dismiss in part and dismissed certain claims against Jaffa without prejudice to Plaintiffs' filing of a third amended complaint. *See* Dkt. No. 44. Plaintiffs did not file a third amended complaint and Jaffa filed his Answer to the Second Amended Complaint on June 8, 2022, which asserted a crossclaim against Defendants.[1] *See* Dkt. No. 46.

---

[1] Jaffa was voluntarily dismissed by Plaintiffs on January 29, 2024. *See* Dkt. No. 88.

On April 10, 2023, Plaintiffs filed their initial motion for default judgment against Defendants.[2] *See* Dkt. No. 57. Jaffa also filed a motion for default judgment as to the Individual Defendants, Skyline, Skyline Management Group, LLC, Cottonwood Healthcare, LLC and First Landing Information Services, LLC on April 10, 2023. *See* Dkt. No. 58.

On July 10, 2023, the Court issued an Order finding that Plaintiffs had failed to properly serve Defendants under the applicable law and denying Plaintiffs' motion for default judgment.[3] *See* Dkt. No. 62. The Court vacated the August 13, 2020 entries of default, directed the Clerk of the Court to reissue summonses for Defendants, and granted Plaintiffs leave to re-serve Defendants within 90 days in accordance with the Federal Rules of Civil Procedure. *Id.* at p. 8. The Court further ordered that a failure by Plaintiffs to properly re-serve Defendants would result in the denial of Plaintiffs' motion for default judgment with prejudice. *Id.*

Plaintiffs requested the entry of default as to Defendants Skyline, Skyline Management Group, LLC, Cornerstone Quality Care, LLC and Cottonwood Healthcare, LLC (collectively the "Corporate Defendants") and the Individual Defendants on November 17, 2023, and default was entered against Defendants. *See* Dkt. Nos. 74, 75, 76, 77, 78, 79. Plaintiffs filed their renewed motion for default judgment on November 20, 2023. *See* Dkt. No. 80.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55 authorizes the Court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling &*

---

[2] Default was entered as to Defendants Cottonwood Healthcare, LLC, Skyline, Skyline Management Group, LLC, and the Individual Defendants on August 13, 2020.

[3] The Court also denied Plaintiffs' motion for default judgment as to First Landing Information Services, LLC and ordered Plaintiffs to "submit papers within thirty (30) days indicating either (1) that service was properly made on Defendant First Landing Information Services, LLC within the time prescribed by the Court; or (2) that good cause exists for failure" to effectuate service. Dkt. No. 62 at p. 8. The Court further ordered that should Plaintiffs fail to do so, First Landing Information Services, LLC would be dismissed. *Id.* Plaintiffs failed to comply with the Court's Order and on August 22, 2023, First Landing Information Services, LLC was dismissed. *See* Dkt. No. 66.

*Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2); *Anchorage Assoc. v. V.I. Bd. of Yax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of a default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984)).

In considering a default judgment motion, the Court must first ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985) (ruling that "[a] default judgment entered when there has been no proper service of the complaint is . . . void . . . ."). Second, the Court must ensure that the "unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citation omitted). In conducting that assessment, the Court assumes as true all factual allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Third, the Court considers the following three factors to determine whether entry of a default judgment is appropriate: "(1) whether the party seeking default will be prejudiced if default is denied, (2) whether the party subject to default has a meritorious defense, and (3) whether the party subject to default is culpable for the delay in responding." *Salins v. EMR Tech. Sols., Inc.*, No. 21-20125, 2023 WL 7386844, at *5 (D.N.J. Nov. 8, 2023) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)). Finally, if default judgment is determined to be appropriate, the Court must conduct "an inquiry to ascertain the

5

amount of damages with reasonable certainty." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) ("In determining the amount, the district court may conduct a hearing." (citation omitted)).

## III. DISCUSSION

In denying Plaintiffs' initial motion for default judgment, the Court found that Plaintiffs had failed to effectuate service on Defendants. Accordingly, the Court will first address whether Plaintiffs have properly served Defendants in accordance with this Court's previous Order and the applicable law.

### A. Individual Defendants

Pursuant to Federal Rule of Civil Procedure 4(e), service upon an individual may be made by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

'
Fed. R. Civ. P. 4(e)(1).

Plaintiffs claim to have served the Individual Defendants via "nail and mail" service pursuant to New York law. *See* Dkt. Nos. 74, 75. As relevant here, New York law permits service on an individual by personal delivery, N.Y. C.P.L.R. § 308(1), by delivery "to a person of suitable

age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to . . . his or her last known residence or . . . his or her actual place of business," N.Y. C.P.L.R. § 308(2), or "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to . . . his or her last known residence or by mailing the summons by first class mail to . . . his or her place of business[.]'" N.Y. C.P.L.R. § 308(4). This last method of "nail and mail" service is "available only as a last resort: if in-person service 'cannot be made with due diligence.'" *Joe Hand Promotions, Inc. v. Necessary Studios, Inc.*, 2022 WL 18858972, at *3 (E.D.N.Y. Dec. 5, 2022) (quoting *Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544 (WFK) (SJB), 2019 WL 13160047, at *2 (E.D.N.Y. July 25, 2019) (quoting N.Y. C.P.L.R. § 308(4)), *on reconsideration in part*, 2019 WL 13160044 (Aug. 14, 2019)).

In denying Plaintiffs' previous motion for default judgment, the Court found that "Plaintiffs fail[ed] to demonstrate that the due diligence requirement was met before resorting to 'nail and mail' service for the Individual Defendants." Dkt. No. 62 at p. 6. To assess whether the due diligence requirement is satisfied, courts look to "the quality of the efforts made to effect personal service, and certainly not to their quantity or frequency." *H Roller Grp., LLC v. C & S Glob., Inc.*, No. 20-CV-5268 (NGG) (RER), 2021 WL 7908034, at *9 (E.D.N.Y. July 1, 2021) (quoting *Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 677 (S.D.N.Y. 2003)). For instance, while courts generally "require[ ] approximately three attempts at service, optimally on non-consecutive days . . . [s]ome courts will find that three attempts is not enough, if the process server does not make inquiries about the defendant's residence or employment." *Weifang Xinli Plastic Prod. v. JBM Trading Inc.*, No. 11-CV-2710 (WFK) (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014) (collecting cases), *aff'd,* 583 F. App'x 24 (2d Cir. 2014); *see also Westchase Residential Assets II,*

*LLC v. Gupta*, No. 14-CV-1435 (ADS) (GRB), 2016 WL 3688437, at *3 (E.D.N.Y. July 7, 2016) (quoting *Est. of Waterman v. Jones*, 46 A.D.3d 63, 66, 843 N.Y.S.2d 462 (N.Y. App. Div. 2007)) ("Courts have found that 'a mere showing of several attempts at service at either a defendant's residence or place of business may not satisfy the 'due diligence' requirement before resort to nail and mail service.'"); *Rozenberg*, 711 F. Supp. 2d at 261 (citing *O'Connell v. Post*, 27 A.D.3d 630, 631, 811 N.Y.S.2d 441 (N.Y. App. Div. 2006)) ("[F]ailed attempts to make delivery at a person's residence will normally not qualify as due diligence unless the process server has also tried to ascertain the person's place of employment."); *Prudence v. Wright*, 94 A.D.3d 1073, 1074, 943 N.Y.S.2d 185 (N.Y. App. Div. 2012) (citations omitted) (finding "[d]ue diligence was not exercised because two of the three attempts at service were at times when the defendant could not reasonably be expected to be at work" and because "no attempt to effectuate service was made at the defendant's actual 'dwelling place or usual place of abode,' nor did the process server make genuine inquires to ascertain the defendant's actual residence or place of employment.").

Following the Court's denial of Plaintiffs' initial motion for default judgment, Plaintiffs attempted to serve the Individual Defendants on multiple occasions. According to Plaintiffs, service on the Individual Defendants was attempted on August 28, 2023 at 11:52 AM at 1859 54th Street, Brooklyn, New York (the "Brooklyn Residence"), and the process server "spoke to the current resident through the bell intercom [who] indicated that the company/recipient is unknown at [that] location." Dkt. Nos. 71-2, 71-9. Thereafter, on September 5, 2023 at 1:24 PM, September 6, 2023 at 7:45 AM, September 7, 2023 at 6:48 PM, and September 8, 2023 at 10:00 AM, Plaintiffs attempted to serve the Individual Defendants at 21 Briarwood Lane, Suffern, New York (the "Suffern Residence"), and the process server stated that "someone [from] the house told me over the intercom that Rosie and Joseph Schwartz are out of the country for months." Dkt. Nos. 71-4,

71-10. Following the foregoing unsuccessful attempts to serve the Individual Defendants, Plaintiffs affixed the Second Amended Complaint and Summonses for the Individual Defendants to the Suffern Residence on September 25, 2023, and mailed the Amended Complaint and Summonses to the Suffern Residence via First Class Mail on September 26, 2023. *See* Dkt. Nos. 71-7, 71-8.

The Court must now determine whether Plaintiffs have satisfied the requisite due diligence in attempting personal service on the Individual Defendants prior to resorting to "nail and mail" service. *Santacruz*, 2019 WL 13160047, at *2. "Whether or not a plaintiff exercised due diligence before resorting to the nail and mail method is determined on a case by case basis after considering the totality of the circumstances." *H Roller Grp., LLC v. C & S Glob., Inc.*, 2021 WL 7908034, at *9 (E.D.N.Y. July 1, 2021) (citations omitted). However, "'a rough standard of due diligence has emerged from the caselaw,'" including "'approximately three attempts at service, optimally on non-consecutive days.'" *Feaster v. NYS Dep't of Corr.*, No. 17-CV-1151-LJV-LGF, 2022 WL 220245, at *2 (W.D.N.Y. Jan. 25, 2022) (quoting *Weifang Xinli Plastics Prods. v. JBM Trading Inc.*, 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014)).

Here, the Court finds that Plaintiffs have not demonstrated the requisite due diligence. Plaintiffs attempted service on only one occasion at the Brooklyn Residence. *See* Dkt. Nos. 71-2, 71-9. Thereafter, Plaintiffs attempted service at the Suffern Residence on four occasions at differing times of day. *See* Dkt. Nos. 71-4, 71-10. These four attempts, however, were on consecutive days. *See id.* While Plaintiffs did indeed make numerous attempts at service, they did not "make approximately three attempts at service during various times of day *and on non-consecutive days*, including at least once outside of regular business hours." *H Roller Grp,* 2021 WL 7908034, at *9 (emphasis added). Furthermore, although Plaintiffs' process server was

9

purportedly informed by an individual at the Suffern Residence that the Individual Defendants were "out of the country for months," Plaintiffs acknowledge that the Individual Defendants could not be "out of the country for months" because "Joseph Schwartz is under house arrest and has surrendered his passport in connection with a parallel criminal proceeding . . . ." Dkt. No. 71 at p. 3. Despite Plaintiffs' awareness that Joseph Schwartz could not be "out of the country for months," Plaintiffs did not attempt service on non-consecutive days or make efforts to obtain alternative locations for service.

Were this Plaintiffs' first attempt at service, the Court may grant leave to re-serve the Individual Defendants. However, this Court was clear that Plaintiffs' failure to properly re-serve Defendants would result in the denial of Plaintiffs' default judgment motion with prejudice. Dkt. No. 62 at p. 8. Accordingly, because Plaintiffs have failed to properly serve the Individual Defendants in accordance with the Court's July 10, 2023 Order [Dkt. No. 62], the Court respectfully recommends that Plaintiffs' motion for default judgment as to the Individual Defendants be denied with prejudice.

**B. Corporate Defendants**

Rule 4(h) of the Federal Rules of Civil Procedure permits service on a corporation (1) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (2) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and — if the agent is one authorized by statute and the statute so requires — by also mailing a copy of the summons and complaint to the defendant. Fed. R. Civ. P. 4(h)(1).

Plaintiffs claim to have also served the Corporate Defendants via "nail and mail" service. *See* Dkt. Nos. 71-11, 71-14, 71-17, 71-20. However, as stated by the Court in denying Plaintiffs'

previous default judgment motion, "nail and mail" service is "not available to [serve] limited liability companies under New York Law." Dkt. No. 62 at p. 7, n. 8 (citation omitted). Indeed, under New York law, "service on a limited liability company cannot be completed via 'nail-and-mail.'" *Retrospective Goods, LLC v. T&M Invs. Int'l, LLC*, 2022 WL 2161935, at *3 (E.D.N.Y. May 20, 2022), *report and recommendation adopted,* 2022 WL 2161384 (E.D.N.Y. June 15, 2022). Accordingly, Plaintiffs' attempt to serve the Corporate Defendants via "nail and mail" service was improper under New York law and the Court therefore finds that Plaintiffs have failed to properly serve the Corporate Defendants. Because the Court previously ordered that Plaintiffs' failure to properly re-serve Defendants within ninety days would result in the denial of Plaintiffs' default judgment motion with prejudice, the Court respectfully recommends that Plaintiffs' motion for default judgment as to the Corporate Defendants be denied with prejudice.

### IV.    CONCLUSION AND ORDER

In light of the foregoing, and the Court having considered this matter pursuant to Federal Rule of Civil Procedure 78;

**IT IS** on this 10th day of February, 2025,

**RECOMMENDED** that Plaintiffs' motion for default judgment [Dkt. No. 80] be **DENIED with prejudice**; and it is further

**ORDERED** that pursuant to L. Civ. R. 72.1 and Fed. R. Civ. P. 72, objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

 s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**